Electronically Filed
Intermediate Court of Appeals
CAAP-12-0000383
24-APR-2015
08:55 AM

NO. CAAP-12-0000383

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

BRIAN M. YOSHII, Claimant/Appellee-Appellant, v. STATE OF
HAWAI'I, UNIVERSITY OF HAWAI'I, Employer/Appellant-Appellee, Self-
Insured, and FIRST INSURANCE COMPANY OF HAWAII, LTD., Third-Party
Administrator/Appellant-Appellee

APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS APPEALS BOARD
(CASE NO. AB 2010-169 (2-08-46774))

MEMORANDUM OPINION
(By:  Foley, Presiding Judge and Fujise, J.,
with Ginoza, J., dissenting)

Claimant/Appellee-Appellant Brian M. Yoshii (Yoshii)
appeals from the March 21, 2012 Labor and Industrial Relations
Appeals Board (Board)[1] Decision and Order (D&O) in favor of
Yoshii's employer, Employer/Appellant-Appellee State of Hawai'i,
University of Hawai'i (State), and Third-Party Administrator/
Appellant-Appellee First Insurance Company (First Insurance),
finding Yoshii did not sustain a compensable injury to his right
knee on October 30, 2008 at his place of employment, the
University of Hawai'i's Leeward Community College (LCC).  The D&O
reversed, in part, the May 13, 2010 Decision (Decision) by the
Director of the Department of Labor and Industrial Relations
(Director) in favor of Yoshii.  On appeal, Yoshii requests that

---

[1]     The Board was composed of Roland Q.F. Thom, Chairman, Melanie S.
Matsui, and David A. Pendleton, Members.

this court reverse the D&O and allow the Director's Decision to stand.

BACKGROUND

On October 30, 2008, the date of the incident giving rise to this claim, Yoshii was employed by LCC as a Cook II. Yoshii's workday was between 6:00 a.m. and 2:30 p.m. The incident occurred at 3:30 p.m.

Yoshii orally reported this incident to his employer and followed up with a written "Report of Work-Related Injury/Illness," (Report) completed on November 18, 2008. In this written Report, he listed the "Date of Injury" as "10-30-08," the "Time of injury" as "3:30 p.m.," and described the event leading to the injury as follows:

> Walking down the loading dock stairway [ ] and I steped
> [sic] on my right foot the wrong way hurting my right calf.
> I had very sharp pain and couldn't move for about 2-3
> minutes. Then I had a very hard time getting in to our
> vehicle.

Yoshii identified the body part involved and extent of injury as "Right calf muscle strain." First Insurance denied the claim pending investigation.

On or about December 15, 2008, a notice of First Insurance's denial was sent to Yoshii, along with the instruction that if he wished to "protect [his] benefit rights," the enclosed Form WC-5, "Employee's Claim for Workers' Compensation Benefits," (Form WC-5) should be returned within thirty days.[2]

On March 11, 2009, Yoshii filed his Form WC-5 for the October 30, 2008 injury. Yoshii again listed the "Date of Accident" as "10-30-08" and "Time of Injury" as "3:30 p.m." and described how the accident occurred as "Walking down loading dock stair stepped on my right foot and felt sharp pain in my leg" and

---

[2] It appears that Yoshii received an extension of time to file his claim until February 2, 2009. It is unclear from this record when Yoshii received representation, but his March 11, 2009 Form WC-5 states that Yoshii was represented by John Riddel, a Union of Public Workers (UPW) Business Agent. On or before July 29, 2009, UPW withdrew from representation and Danny J. Vasconcellos of Takahashi Vasconcellos and Covert assumed representation.

the injury/illness as "Torn ligament on right knee both inside and outside." No amendment of this claim appears of record.[3]

A hearing on Yoshii's claim was had on March 23, 2010. On May 13, 2010, the Director[4] issued his Decision, determining

---

[3] In his Decision, the Director summarized Yoshii's position this way:

The claimant contends he suffered a compensable injury to the right knee on 10/30/2008 when he stepped on his right foot and felt a sharp pain in his leg while walking down the loading dock stairs. The claimant explained he sought medical treatment at the emergency room of Kapiolani Medical Center on 10/30/2008, and then followed-up with Dr. Ragunton on 11/3/2008. Dr. Ragunton proceeded to evaluate the claimant, obtained a CT scan of the right leg and adjusted claimant's medications, which resulted in decreased swelling and pain. Dr. Ragunton then referred the claimant to Dr. Oishi because the claimant continued to complain of upper calf and knee pain. Claimant first treated with Dr. Oishi on 12/29/2008. An MRI obtained on 12/29/2008 revealed chondromalacia and a tear of the medial meniscus, for which the claimant underwent surgery on 1/17/2009 (performed by Dr. Oishi). The claimant contends that although the medical records initially investigated his right leg pain complaints, more specifically, the right calf, his industrial injury is to the right knee, for which claimant filed a Employee's Claim For Workers' Compensation Benefits (WC-5), on 3/11/2009. The claimant also relies upon Dr. Ragunton's report dated 3/30/2009, Dr. Oishi's report dated 3/5/2010, and the CT scan dated 11/3/2008.

The claimant contends he is entitled to temporary total disability (TTD) benefits beginning 10/31/2008 through 7/22/2009 as he was disabled from work due to the right knee injury. The claimant relies upon disability slips from Dr. Ragunton, Calvin Oishi, M.D., and Alan Oki, M.D.

[4] The Director summarized the issues presented as follows:

Did the claimant suffer an injury arising out of in the course of employment on 10/30/2008?

Is the claimant entitled to temporary disability as a result of the industrial injury? If so, what is the period of temporary disability resulting from the industrial injury?

Should disability certifications from Luis Ragunton, M.D. [Dr. Ragunton], Calvin Oishi, M.D. [Dr. Oishi], and Alan Oki, M.D. [Dr. Oki], be stricken from the record pursuant to Section 12-10-75, Workers' Compensation Administrative Rules (WCAR)?

Should the report of Calvin Oishi, M.D., dated 3/5/2010, be stricken from the record pursuant to Section 12-10-75, WCAR?

(continued...)

that Yoshii suffered a compensable injury to his right knee on October 30, 2008 and awarding "such medical care, services and supplies as the nature of the injury may require."[5]  The Director based his determination on Yoshii's March 11, 2009 Claim and Yoshii's treating physician, Dr. Ragunton's, reports dated March 30, 2009, and disregarded the reports of Drs. Mihara and Davenport.  Although the Director recognized in his "Principles of Law" that workers compensation benefits can be awarded for an "employee who suffers a personal injury either by accident arising out of and in the course of employment or by disease proximately caused by or resulting from the nature of the employment," (emphasis added), the Director made no findings of fact regarding any disease caused or resulting from the nature of Yoshii's employment and appears to have based his award to Yoshii solely on Yoshii's claim of injury on October 30, 2008.

Yoshii initially appealed from the Director's Decision to the Board on May 19, 2010, but in light of his notice of intent to withdraw his appeal, the Board eventually dismissed his appeal and designated the State as Appellant on October 5, 2010.  In its October 5, 2010 First Amended Pretrial Order, the Board summarized the issues presented as follows:

---

[4](...continued)
> Should the report of Kent Davenport, M.D. [Dr. Davenport], dated 6/4/2009 be stricken from the record pursuant to Section 12-10-75, WCAR?

[5]     The Director also  (1) awarded temporary total disability (TTD) benefits beginning on January 2, 2009 through June 24, 2009, less the three-day waiting period; (2) disallowed TTD benefits for the period between October 31, 2008 through December 31, 2008 and June 25 through July 22, 2009; (the denial of benefits was based on the disability certifications of Drs. Ragunton and Oki and Director's determination that Yoshii's "disability from work for the aforementioned period was due to conditions unrelated to claimant's right knee injury."); (3) denied the request to strike the challenged disability certifications (deciding the administrative rules did not authorize him to do so); and (4) struck the March 5, 2010 report of Dr. Oishi and the June 4, 2009 report of Dr. Davenport (under Hawaii Administrative Rules (HAR) 12-10-75 because they were not timely provided to all parties.).

Determination of benefits for permanent disability and disfigurement were reserved.

4

a.   Whether [Yoshii] sustained a personal injury to the right knee on October 30, 2008, arising out of and in the course of employment.

b.   Whether the disability certifications from [Drs. Ragunton, Oishi, and Oki] should be stricken from the record pursuant to Section 12-10-75 [HAR].

c.   Whether the report of [Dr. Davenport] dated June 4, 2009 should be stricken from the record pursuant to Section 12-10-75, [HAR].

No objections to, nor further amendments of this order appear of record.

A hearing *de novo* was had on May 11, 2011 upon the submissions of the parties and the testimony of Yoshii. Of note is Yoshii's testimony regarding the events of October 27[6] and 30, 2008:

> CHAIRMAN THOM: You know, on October 27, '08 [sic], you stood up in the theaters at Kapolei and you felt pain in your right leg. Is that right?
>
> THE WITNESS: Correct.
>
> CHAIRMAN THOM: And this has been described as right calf pain. Is that right?
>
> THE WITNESS: Correct.
>
> CHAIRMAN THOM: Can you show me now by using your hands where that pain was located?
>
> So, it is below the big part of your knee, but above the -- at the top of the calf muscle. Is that right?
>
> Okay. All right. You may be seated.
>
> Now, on October 30, which is when you were walking down the loading dock staircase, where was the pain symptoms mostly that caused you to cry out and wait for two to three minutes?
>
> THE WITNESS: The same area.
>
> CHAIRMAN THOM: Did it go into the big part of your leg where your knee bends?
>
> THE WITNESS: Well, to tell you the truth, you know, I felt it was like my calf. Because that's what was bothering me earlier and that's what I went to see the doctor for.
>
> . . . .

---

[6]   It appears that the date of the incident at the movie theater occurred on October 26, 2008. <u>See</u> Form WC-2 dated March 30, 2009.

CHAIRMAN THOM: Yeah, you have to answer audibly. So, the question was whether or not it was in the big part of your knee or at the top of the calf muscle.

THE WITNESS: My answer was that because of my earlier injury, thinking that it was my calf, I thought it was my calf.

CHAIRMAN THOM: Okay.

MR. PENDLETON: So, Mr. Yoshii, would it be correct to say that the pain experienced was in the same location on your leg?

THE WITNESS: Around about, yes.

MR. PENDLETON: But the intensity between the theater accident and -- or the theater situation and the date of accident at work, the intensity of pain was different?

THE WITNESS: Yes. Correct.

MR. PENDLETON: And on the date of accident, was it more intense or less --

THE WITNESS: Yes.

MR. PENDLETON: It was more intense on the date --

THE WITNESS: Yes.

MR. PENDLETON: -- of accident at work?

THE WITNESS: I know something happened. For me to put it that way, you know. I know something was really wrong, you know?

On March 21, 2012, the Board issued its D&O, ultimately concluding that Yoshii "did not sustain a personal injury to his right knee on October 30, 2008, arising out of and in the course of employment" and concluding that the other issues were moot. This timely appeal followed.

## DISCUSSION

Yoshii presents seven points of error and three main arguments in support of his challenge to the Board's determination. We reorder these points and arguments and address them as follows:

### I.

In his first Point of Error and argument C, Yoshii takes issue with the Board's observation, in its Finding of Fact 3, that Yoshii's supervisor noted that Yoshii was "off the

clock" when the claimed injury occurred. While Yoshii himself reported that the injury occurred about an hour after he completed his shift for the day, he argues that this fact cannot serve as an independent basis for the Board's conclusion that his October 30, 2008 injury did not arise out of and in the course of his employment. Thus, Finding of Fact 3 is not clearly erroneous and as we find no indication in the Board's D&O that it based its decision in any way on the time of the injury and thus reject Yoshii's first point and argument C as without merit.

## II.

In Points of Error two through four, Yoshii faults the Board's Findings of Fact 8, 10, 11, 16, and 17. However, the parts quoted by Yoshii are merely the Board's statements of the observations and opinions actually made by Drs. Mihara, Davenport, Oki, and Ragunton. As Yoshii does not argue that these statements are clearly erroneous, we conclude that these designations of error have been abandoned and, in any event are without merit.

We also reject Yoshii's challenge, in Points of Error two, three, and six, to Finding of Fact 16. This challenge consists of argument, contained in these points as well as in arguments A and B, to the Board's assessment that it would credit certain doctor's opinions and reports over others.[7]

---

[7]    On this point, we note that Yoshii challenges Dr. Mihara's opinion "that the medical records neither suggested a work related injury or aggravation nor a meniscal tear or a knee joint injury that occurred at work on October 30, 2008," on the basis that Dr. Mihara did not "seek to obtain either the MRI or the surgery operation records, which were available." In fact, Dr. Mihara did review the MRI of Yoshii's right knee. In any event, Yoshii does not argue how review of either of these documents would have changed Dr. Mihara's opinion.

Yoshii also takes issue with the Board's Finding of Fact 16 insofar as it called Dr. Ragunton's opinions "inconsistent." The record contains Dr. Ragunton's reports which describe Yoshii's injury, as, on October 27, 2008: "pain in the right leg . . . after getting off the chair after watching a movie on Sunday [October 26, 2008;]" on November 3, 2008: Yoshii "re-injured his calf on 10/30/08. . . . Evaluation in the emergency room revealed no significant pathology. The patient is concerned of possible muscle injury since he stands all day at work[;]" and in his March 30, 2009 Form WC-2 Physician's Report: that he did not originally pursue a work

(continued...)

The Board conducts a *de novo* review of the record and takes evidence and testimony presented by the parties. See HRS § 386-87 (1993); HRS § 91-10 (2012). Credibility is a matter left to the trier of fact. The Board is not required "to reconcile conflicting expert testimony in favor of the claimant; that proposition would eviscerate the well established rule that the Board's determinations of credibility and weight are entitled to deference." Nakamura v. State, 98 Hawai'i 263, 270, 47 P.3d 730, 737 (2002).

Yoshii's challenge to Finding of Fact 17 in point of error four is based on his argument that, based on Dr. Mitsunaga's opinion that Yoshii "had osteoarthritis that was aggravated by his work activities"--an opinion the Board acknowledged by accepting Yoshii's Proposed Finding of Fact 44-- the Board should have concluded that

> the nature of the injury included the aggravation to the degenerative condition and the tear in his right knee from [Yoshii's] work activities and that the progression of the arthritis and the effect of the work activities on the knee caused the tear of the posterior horn of the lateral meniscus that in turn required the surgery.

However, Yoshii's claim for the injury in this case-- reported soon after the event and after Yoshii's knee surgery had been performed--was not based on cumulative injury stemming from work activity, but upon the stair-stepping event occurring on October 30, 2008. See November 18, 2008 Report and March 11, 2009 Form WC-5. Consistent with Yoshii's Report and Form WC-5, the Director and the Board based their ruling on the merits of a workers compensation claim for an injury occurring on October 30, 2008 and did not decide a cumulative injury claim. Thus,

---

[7](...continued)
related claim, because Yoshii's initial presentation was "unclear." He concludes by providing the following explanation:

> However the patient feels certain that his knee pain and subsequent torn meniscus was related to the injury at work on October 27, 2008. I am in agreement with this because the patient had no significant problems with his knee until after his injury. I also excluded and treated medical causes for pain and swelling of his right knee.

whatever merit there might be to a cumulative injury claim by Yoshii--upon which we do not opine--this case does not involve that claim.

Yoshii also challenges Finding of Fact 17 in point of error six, on the basis that, the Board erred in rejecting his experts' opinions by finding that the pain Yoshii experienced on October 30, 2008 was related to the edema he experienced on October 26, 2008. We cannot say that the Board's finding was clearly erroneous. Yoshii testified that the pain he felt when getting up in the movie theater was in the right upper part of the calf muscle and the pain when he took the misstep on October 30, 2008 was in the "same area." Yoshii's own expert, Dr. Ragunton, noted that it appeared, upon examination on October 27, 2008, that Yoshii's "leg pain was caused by leg swelling and fluid retention" and we cannot say that the Board's finding was clearly erroneous.

### III.

Yoshii's fifth point of error and part of his argument B is that the Board erred in its Findings of Fact 15 and 18 that Yoshii's testimony describing his injury was not credible because it was inconsistent, inconsistent with the medical records, and, as to Yoshii's self-described claim of torn ligaments, was not supported by any evidence. Again, matters of credibility are for the trier of fact.[8] Nakamura, 98 Hawai'i at 270, 47 P.3d at 737.

### IV.

In point of error seven, Yoshii challenges the Board's determination that the State overcame the presumption of compensability in Finding of Fact 19 and Conclusion of Law 1.[9]

---

[8] We do note that Dr. Mihara relied on the medical records rather than on Yoshii's verbal medical history for this same reason. We further note that, although Yoshii points out that the surgeon performed a partial medial and lateral meniscectomy for the meniscus tear, menisci are not ligaments, but cartilage of the knee. http://encyclopedia.thefreedictionary.com/Meniscus+(knee) last accessed March 19, 2015.

[9] As previously stated, we do not address Yoshii's argument regarding cumulative injury as it was not included in the claim before us.

Yoshii is correct that the State is obligated to provide substantial evidence that his claim is not compensable to overcome the statutory presumption afforded to employees pursuant to HRS § 386-85(1) (1993).[10]  To overcome the presumption, the employer must carry the burden of production and the burden of persuasion.  The evidence must be substantial, and at a minimum, be "credible and relevant."  Akamine v. Hawaiian Packing & Crating Co., 53 Haw. 406, 409, 495 P.2d 1164, 1167 (1972).

In this case, there was substantial evidence overcoming the presumption of compensability.  Yoshii's claim was based on an event occurring on October 30, 2008.  See Form WC-5.  On that date, through the reports of his treating physician, Dr. Ragunton, Yoshii complained of right leg pain that Yoshii confirmed in his testimony was to the upper part of his calf muscle.  It was undisputed that the incidents leading up to the pain for which this claim was made were (1) getting out of a chair on October 26, 2008 and (2) taking a step down stairs on October 30, 2008, neither in fact occurring while performing his work duties or during work hours.  Dr. Ragunton's notes document that Yoshii was initially treated by him with diuretics.  A CT scan and ultrasound was performed on November 3, 2008, revealing no phlebitis (inflamed veins) or clots; nor was any torn muscle found; as of November 24, 2008, Yoshii reported that the pain in his right leg had improved; and that reduced edema and no calf tenderness in Yoshii's right calf was observed.  None of these records indicate pain involving Yoshii's right knee.

---

[10]     Yoshii's first point of error is that the Board erred in its FOF 3 that Yoshii was off the clock when the alleged injury occurred on October 30, 2008.  Yoshii submitted a "Report of Work-Related Injury/Illness" to his supervisor, Travis Kono, on November 18, 2008, wherein Yoshii reported his work hours on October 30, 2008 as being from 6:00 a.m. to 2:30 p.m., one hour before he suffered a "right calf muscle strain."  Yoshii states that the "Board did not appear to decide non-compensability based on these findings, having discussed the crediting of employer medical opinions at length[.]" Yoshii does not argue the point in his argument section.

Because Yoshii does not present an argument that the Board erred in this FOF, we conclude that Yoshii has abandoned this point.

10

On December 29, 2008, Yoshii saw Dr. Oishi, an orthopedic surgeon, to whom he reported "persistent knee pain going on for several weeks." Based on medial tenderness and an effusion on examination and the persistence of the pain, Dr. Oishi obtained an MRI. The MRI revealed "a moderate knee joint effusion, moderate chondromalacia of the tibiofemoral joint [and] lateral patellofemoral joint as well as possible degenerative tear of the medial meniscus." Based on the persistent pain, Dr. Oishi operated on Yoshii on January 17, 2009, performing "a partial medial and lateral meniscectomy, as well as an arthroscopic lateral release with chrondomalacia patella." Yoshii received physical therapy until May 27, 2009.

The State also presented the report of Dr. Mihara, who performed an independent medical examination on February 9, 2009. Again, Yoshii reported to Dr. Mihara of pain to his right calf. After a physical examination of Yoshii and a review of his medical records, including the MRI, Dr. Mihara provided a summary of his findings and concluded,

> It is my opinion that the claimant's pain experienced on 10/30/08 was likely radicular in origin. This was a preexisting condition documented in the medical record dating back a number of years. It had been more frequent in recent years and in particular, it flared up just several days prior to 10/30/08 after the claimant stood up after watching a movie. This suggests the possibility of a nerve root irritation. The medical record available to me does not suggest any work related link, and the medical record does not indicate any gastrocnermius tear or meniscal tear due to work injury. In other words, I can find no evidence in the medical record to suggest that this was a work related trauma or problem. I am forced to rely on the medical record given the inconsistencies in the claimant's verbal history.

Based on the foregoing, we conclude that the Board did not err in concluding the State overcame the presumption of

11

compensability and therefore did not err in reaching Finding of Fact 19 or Conclusion of Law 1.

CONCLUSION

The March 21, 2012 Labor and Industrial Relations Appeals Board Decision and Order is affirmed.

DATED:   Honolulu, Hawai'i, April 24, 2015.

On the briefs:

Herbert R. Takahashi
Rebecca L. Covert
Davina W. Lam
(Takahashi & Covert)
for Claimant/Appellee-
Appellant Brian M. Yoshii.

Paul A. Brooke
(Leong Kunihiro Lezy & Benton)
for Self-Insured
Employer/Appellant-Appellee
State of Hawai'i, University of
Hawai'i, and Third-Party
Administrator/Appellant-
Appellee First Insurance
Company of Hawaii, Ltd.

Presiding Judge

Associate Judge

12